GRAUWILLER et al. v. MOSES et al.

(Circuit Court of Appeals, Second Circuit. January 8, 1912.)

No. 108.

SHIPPING (§ 58*)—LIABILITY FOR INJURY TO VESSEL—NEGLIGENT DOCKING.

Evidence *held* insufficient to establish that an injury to a scow by settling on boulders, after she had been beached at high tide by the cargo owner without authority from her owners, was due to his negligence; there being evidence that she had drifted, owing to the failure of the master to properly secure her.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 233–244; Dec. Dig. § 58.*]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Frederick E. Grauwiller, Jr., and another, against Lionel Moses, 2d, and another. Decree for respondents, and libelants appeal. Affirmed.

Foley & Martin (William J. Martin and Frank A. Spencer, Jr., of counsel), for appellants.

Martin A. Ryan (William Rice, of counsel), for appellees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The libelants, owners of the scow Archer, were employed by the defendant Stafford to carry a load of trap rock from Tompkins Cove, New York, to Lloyds Neck, Long Island, where the scow was to be beached on the south side of the breakwater extending in a westerly direction from Lloyds Neck. Another of the libelants' scows had been beached at this place about a month before, with a similar cargo.

The scow arrived Saturday, August 28, 1909, and made fast to a buoy outside of her destination on account of the weather. The libelants had arranged with one Bingham to beach the boat; but the defendant Stafford, by her agents, employed another company to do so. Being trespassers, they would be responsible for any damage caused by negligence in the operation or resulting from any failure to advise the master of the scow of dangers unknown to him.

There is a space of sandy beach extending southward from the breakwater, say 150 feet, where boats can be safely beached. But south of this, and a little further out to the westward, there are boulders. The boat was placed broadside on the beach about the top of high water on Monday, August 30th, at 10:30 a. m., bow to the southward, with one line run out from her port quarter at right angles to a part of the breakwater on the shore, and another leading somewhat forward from her port bow to what is called a "dead man"; that is, a piece of iron buried in the sand.

The libelants say that within an hour after the scow was beached she rested, as the tide fell, on two rocks, one near her bow and one near her stern, which damaged her greatly and caused her to leak. The respondents, on the other hand, say that the boat was not dam-

aged until Tuesday afternoon as the result of her being shifted by a north wind, on the second high water after she was beached, further south and west over the boulders; and they say that when the boat was beached her master was told to put out a line straight astern to the breakwater, in order to avoid this very danger, and that he refused to do so.

Either account may be true, although there are difficulties in each. The court below decided against the libelants, and we would affirm, without writing anything, but for the piece of evidence now to be mentioned. The libelants offered in evidence an undated postal card from the master of the scow to them at New York, informing them that the boat had a hole in her and was leaking. This card was postmarked as received at the Huntington office, August 31st, at 8 a. m., and the evidence is that it must have been mailed at Lloyds Neck on Monday afternoon, if the postmark is correct. If so, the scow must have been damaged on the falling tide of Monday morning, and the master's testimony is true, and the respondents' testimony is false.

This consideration has caused us much hesitation; but in view of the great preponderance of the oral testimony in favor of the respondents, and of the fact that the trial judge saw all the witnesses, we will not disturb his finding, though it is against the presumption that the postmaster at Huntington correctly stamped the postal card.

Decree affirmed, but without costs of this court.